```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


BOARD OF SUPERVISORS OF        )
PRINCE WILLIAM COUNTY,         )
                               )
     Plaintiff,                )
                               )
          v.                   )    1:11cv819 (JCC/JFA)
                               )
UNITED STATES DEPARTMENT OF    )
HOMELAND SECURITY,             )
                               )
     Defendant.                )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant the United States Department of Homeland Security's ("Defendant" or "DHS") Motion for Judgment on the Pleadings (the "Motion"). [Dkt. 13.] Because the Motion is accompanied by an affidavit attesting to matters outside the pleadings, it shall be treated as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). For the following reasons, Defendant's Motion for Summary Judgment is granted.

### I. Background

This case arises out of an alleged withholding of certain records by DHS in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

1

A. Factual Background

Plaintiff is the Board of County Supervisors of Prince William County, Virginia ("Plaintiff" or "the Board"). The Board funds, maintains, and oversees the Prince William County Police Department, and is the primary funding and operational partner in the regional entity, which operates the Prince William/Manassas Regional Adult Detention Center. (Am. Compl. [Dkt. 8] ¶ 5.) Both the Prince William County Police Department and the Adult Detention Center have, with the authorization of the Board, entered into written agreements with Immigration and Customs Enforcement ("ICE"), a component of DHS, under which ICE directs employees of the Police Department to investigate the immigration status of offenders and directs employees of the Adult Detention Center to issue ICE detainers against offenders who are illegal immigrants. (Am. Compl. ¶ 6.)

On November 22, 2010, the Board submitted a FOIA request to DHS using its web interface application. (Am. Compl. ¶ 10.) The Board also sent the request via facsimile and e-mail to Citizenship and Immigration Services ("CIS"), the component of DHS that oversees lawful immigration to the United States. (Am. Compl. ¶¶ 8, 10.) The request sought access to three distinct categories of information:

    (1) Copies of any and all records and reports (or any non-exempt portions thereof) of the U.S. Department of Homeland Security, the U.S. Immigration and Customs Enforcement Division,

A. Factual Background

Plaintiff is the Board of County Supervisors of Prince William County, Virginia ("Plaintiff" or "the Board"). The Board funds, maintains, and oversees the Prince William County Police Department, and is the primary funding and operational partner in the regional entity, which operates the Prince William/Manassas Regional Adult Detention Center. (Am. Compl. [Dkt. 8] ¶ 5.) Both the Prince William County Police Department and the Adult Detention Center have, with the authorization of the Board, entered into written agreements with Immigration and Customs Enforcement ("ICE"), a component of DHS, under which ICE directs employees of the Police Department to investigate the immigration status of offenders and directs employees of the Adult Detention Center to issue ICE detainers against offenders who are illegal immigrants. (Am. Compl. ¶ 6.)

On November 22, 2010, the Board submitted a FOIA request to DHS using its web interface application. (Am. Compl. ¶ 10.) The Board also sent the request via facsimile and e-mail to Citizenship and Immigration Services ("CIS"), the component of DHS that oversees lawful immigration to the United States. (Am. Compl. ¶¶ 8, 10.) The request sought access to three distinct categories of information:

    (1) Copies of any and all records and reports (or any non-exempt portions thereof) of the U.S. Department of Homeland Security, the U.S. Immigration and Customs Enforcement Division,

      and/or the U.S. Citizenship and Immigration Services Division regarding those individuals taken into physical custody in Prince William County (as held by the Police Department or the Adult Detention Center) and to which physical custody was then turned over to ICE from January 1, 2008 to present;

  (2)  Copies of any and all alien files (or any non-exempt portions thereof) of the U.S. Department of Homeland Security, the U.S. Immigration and Customs Enforcement Division, and/or the U.S. Citizenship and Immigration Services Division regarding those individuals taken into physical custody in Prince William County (as held by the Police Department or the Adult Detention Center) and to which physical custody was then turned over to ICE from January 1, 2008 to present; and

  (3)  Copies of any and all reports (or non-exempt portions thereof) of the U.S. Department of Homeland Security, the U.S. Immigration and Customs Enforcement Division, and/or the U.S. Citizenship and Immigration Services Division that include data and/or statistics concerning the contacts, disposition, and/or the status regarding those individuals taken into physical custody in Prince William County (as held by the Police Department or the Adult Detention Center) and to which physical custody was then turned over to ICE from January 1, 2008 to present.

(Am. Compl. ¶ 11; Ex. A.) The Board received an automated electronic confirmation evidencing receipt of the request by DHS and ICE. (Am. Compl. ¶ 12.)

      On December 6, 2010, the Board received a letter from CIS dated November 30, 2010, stating that the records sought were not under the purview of CIS, and if any such records exist, they would be maintained by ICE. (Am. Compl. ¶ 13.) CIS also indicated that although it maintains alien files, it could

3

not discern which files were sought and, even if it could, their release would constitute an unwarranted invasion of personal privacy. (Am. Compl. ¶ 14.)

The Board also received a letter from ICE on December 6, 2010. (Am. Compl. ¶ 15.) The letter was dated November 22, 2010, and indicated that the FOIA request had been received, had been assigned a case number, and was being processed. (*Id.*)

On January 25, 2011, the Board submitted a written request to ICE for a status update with respect to the FOIA request. (Am. Compl. ¶ 17.) The Board, by counsel, also contacted ICE several times by telephone. (Am. Compl. ¶¶ 18-19.) Yanil Escobar, to whom the FOIA request had been assigned, indicated that responsive documents would be forthcoming. (Am. Compl. ¶¶ 18, 20.) It was eventually communicated that Ryan Law, the Deputy FOIA Officer for ICE, would be providing a response. (Am. Compl. ¶ 20.)

ICE provided a response on February 11, 2011, which included a three-page cover letter and a redacted spreadsheet responsive to items (1) and (3) of the Board's FOIA request. (Am. Compl. ¶ 21; Exs. G, H.) In support of the redactions, ICE cited FOIA Exemptions 2, 6, and 7(C), 5 U.S.C. §§ 552(b)(2), (6) & (7)(C).[1] (Am. Compl. Ex. G.) The cover letter indicated that

---

[1] DHS notes that ICE has withdrawn reliance on Exemption 2 due to the Supreme Court's decision in *Milner v. Department of the Navy*, --- U.S. ----, 131 S.Ct. 1259, 1271 (2011), and substituted reliance on Exemption 7(E). (Def.'s Mem. [Dkt. 14] at 3 n.1.) Exemption 6 exempts "personnel and medical files

4

the alien files sought in item (2) of the FOIA request were maintained by CIS and that the request would be forwarded to that component. (Am. Compl. ¶¶ 22-23; Ex. G.) The Board never filed an administrative appeal of ICE's response to the FOIA request. (Mot. [Dkt. 13] Ex. 1 ("Law Decl.") ¶ 12.)

In a letter dated June 10, 2011, CIS advised the Board that it was further reviewing the request for alien files. (Am. Compl. ¶ 28.) CIS also asked the Board to provide written consent and verifications of identity for the individuals whose records were being sought, as well as each subject's alien number, name, date of birth, and country of birth. (Am. Compl. ¶ 28; Ex. I.) The letter indicated that if the Board failed to provide this information within thirty days, the request would be administratively closed. (Am. Compl. ¶ 28; Ex. I.)

### B. Procedural Background

The Board initially filed suit on August 4, 2011. [Dkt. 1.] In response to a motion to dismiss filed by DHS, the Board filed an Amended Complaint on September 27, 2011. [Dkt. 8.] In the Amended Complaint, the Board alleges that DHS violated FOIA by failing to provide a timely response to the

---

and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(6). Exemption 7 exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(7)(C), or "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(7)(E).

5

Board's FOIA request and withholding records based on inapplicable exemptions. (Am. Compl. ¶¶ 32-33.) The Board seeks the production of non-exempt documents responsive to its FOIA request, the production of a *Vaughn* index of withheld documents, and attorneys' fees and other litigation costs. (Am. Compl. at 8.) DHS subsequently withdrew its motion to dismiss and answered the Amended Complaint. [Dkts. 10, 11.] DHS then filed its Motion for Judgment on the Pleadings on December 23, 2011 [Dkt. 13], which, as noted above, shall be treated as a Motion for Summary Judgment. The Board filed its opposition on January 20, 2012 [Dkt. 22], to which DHS replied on January 25, 2012 [Dkts. 23, 24]. DHS's Motion is before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

A. <u>Legal Framework</u>

The issue raised in DHS's Motion is whether the Board's FOIA claim should be dismissed because the Board failed to exhaust its administrative remedies. Generally, a requester may seek judicial review of his FOIA request only after he has exhausted administrative remedies. *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (citing *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987)). However, the agency's failure to respond to the request within the required time period may constitute "constructive exhaustion." *Id.* (citing 5 U.S.C. 552(a)(6)(C); *Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990)). The agency is required to determine within twenty working days after receiving a request whether it will comply and to notify the requester of that decision. 5 U.S.C. § 552(a)(6)(A)(i). A requester who has not received timely notice of the agency's decision is deemed to have constructively exhausted administrative remedies, and may proceed to court without filing an administrative appeal. *Pollack*, 49 F.3d at 118. If, however, an agency responds to a FOIA request before the requester files suit, then constructive exhaustion is inapplicable and actual exhaustion of administrative remedies is required. *See id.* ("Under FOIA's statutory scheme, when an agency fails to comply in a timely

8

fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies *unless the agency responds to the request before suit is filed*.") (emphasis added) (citing 5 U.S.C. 552(a)(6)(C); *Oglesby*, 920 F.2d at 62). Exhaustion under FOIA is a prudential doctrine rather than a jurisdictional requirement. *Am. Mgmt. Servs., LLC v. Dep't of the Army*, --- F. Supp. 2d ----, 2012 WL 215046, at *3 n.5 (E.D. Va. Jan. 23, 2012).[2] Nonetheless, FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review. *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003).

The Board does not question these legal principles. Rather, the Board contends that it is entitled to constructive exhaustion because the responses it received from CIS prior to filing suit do not constitute determinations triggering a duty to file an administrative appeal. (Opp. [Dkt. 22] at 3-4.) At oral argument, the Board also argued that even if it is not entitled to constructive exhaustion, prudential considerations weigh in favor of the Court retaining this case. Two components of DHS -- ICE and CIS -- responded to the Board's FOIA request. The Court will analyze the responses from each component separately.[3]

---

[2] While some courts have held otherwise, those decisions are neither persuasive nor controlling. *See Hull v. IRS*, 656 F.3d 1174, 1181–82 (10th Cir. 2011) (collecting cases).

[3] At oral argument, the Board argued that the Court should examine whether the two components' responses are adequate viewed collectively. This argument is unavailing. The Board's FOIA request sought access to three discrete categories of information, with items (1) and (3) falling within ICE's

B. <u>ICE</u>

Upon review of ICE's February 11, 2011 response, the Court finds the response adequate, and therefore concludes that the Board was obligated to file an administrative appeal. A response is sufficient for purposes of requiring an administrative appeal if it includes: (1) the agency's determination of whether or not to comply with the request; (2) the reasons for the agency's decision; and (3) notice of the right to appeal if the decision was adverse. *Oglesby*, 920 F.2d at 65. Even assuming, as the parties have, that ICE's response to the Board on December 6, 2010 was inadequate,[4] ICE's response on February 11, 2011 to items (1) and (3) of the FOIA request was clearly a "determination" which the Board was obligated to administratively appeal. The February 11, 2011, response informed the Board that records responsive to items (1) and (3)

---

purview and item (2) falling within CIS's purview. The Court sees no reason why it should not examine ICE's responses and CIS's responses separately under these circumstances. *See Dettmann v. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986) ("[A] plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request -- and thus properly seek judicial review regarding that request -- and yet not have exhausted her remedies with respect to another aspect of a FOIA request.")

[4] The Court notes that it is by no means clear that ICE's December 6, 2010, response was inadequate. The response fell within FOIA's twenty-day timeframe, and indicated that ICE had received the FOIA request and intended to process it. (See Am. Compl. Ex. E.) In its opposition, the Board takes the position that something more is required to comply with FOIA. However, FOIA does not require an agency "to respond and produce responsive documents within twenty days in order to require exhaustion of administrative remedies." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, --- F. Supp. 2d ----, 2011 WL 6880679, at *6 (D.D.C. Dec. 30, 2011). "Rather, in the event the agency intends to produce documents in response to the request, the agency need only (1) notify the requesting party within twenty days that the agency intends to comply; and (2) produce the documents 'promptly.'" *Id.* The first element is clearly met here, and, given the relatively broad nature of the FOIA requests, ICE's production of the redacted spreadsheet twelve weeks later was reasonably prompt.

of the FOIA request had been located, stated the reasons for the redactions in the attached spreadsheet, and notified the Board of its right to appeal. (*See* Am. Compl. Ex. G.) Thus, ICE properly responded to items (1) and (3) of the Board's FOIA request before the filing of this suit, and the Board is not entitled to constructive exhaustion as to this portion of its claim.

The Court also concludes that prudential considerations counsel in favor of requiring exhaustion. "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61 (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). In this case, judicial review "would cut off the agency's power to correct or rethink initial misjudgments or errors and frustrate the policies underlying the exhaustion requirement." *Hidalgo*, 344 F.3d at 1260 (citations omitted) (applying exhaustion requirement to plaintiff challenging agency's invocation of FOIA Exemptions 6 and 7(C)). The Board's "disappointment in the quality of the records provided does not dispense with the administrative appeal requirement of the FOIA." *Stuler v. IRS*, No. 10-1342, 2011 WL 2516407, at *3 (W.D. Pa. June 23, 2011) (citation omitted). For

11

these reasons, summary judgment is granted insofar as the Board's FOIA claim relates to items (1) and (3) of the FOIA request.

      C.    <u>CIS</u>

The Court also finds the Board's FOIA claim administratively barred as it relates to item (2) of the FOIA request, because this portion of the request was defective. CIS's original letter, dated November 30, 2010, advised the Board that additional information was required to process its FOIA request. (Am. Compl. Ex. D.) CIS's second letter, dated June 10, 2011, reiterated that additional information was required -- specifically, written consent and verifications of identity for the individuals whose records were being sought (Am. Compl. Ex. I (citing 6 C.F.R. §§ 5.3(a) & 5.21(d)))[5] as well as each subject's alien number, name, date of birth, and country of birth (*id.*).

Compliance with both FOIA and agency requirements is necessary before the agency can release the requested records. *Dale v. IRS*, 238 F. Supp. 2d 99, 102 (D.D.C. 2002). "Failure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal." *Id.* at 103 (citations omitted); *see also In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986) ("The complainant must request specific

---

[5] While CIS's letter cites 6 C.F.R. § 5.21(d), it is 6 C.F.R. § 5.21(f) which governs the verification of identity requirement in instances involving third party information requests.

information in accordance with published administrative procedures, and have the request improperly refused before that party can bring a court action under the FOIA.") (internal citations omitted); *Ramstack v. Dep't of Army*, 607 F. Supp. 2d 94, 102 (D.D.C. 2009) ("[O]nly a valid FOIA request can trigger an agency's FOIA obligations, and [] failure to file a perfected request therefore constitutes failure to exhaust administrative remedies.") (internal quotation marks omitted); *Schwarz v. FBI*, 31 F. Supp. 2d 540, 542 (N.D. W.Va. 1998) (finding that plaintiff failed to exhaust administrative remedies when agency instructed her how to perfect FOIA request and she failed to do so), *aff'd* 166 F.3d 334 (4th Cir. 1998) (unpublished table decision).

FOIA commands that a request (1) "reasonably" describe the records sought and (2) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Pursuant to FOIA, DHS has promulgated regulations detailing the rules and procedures that must be followed by persons requesting DHS records. Relevant here is the requirement that a request for records about another individual include "either a written authorization signed by that individual permitting disclosure of those records . . . or proof that that individual is deceased." 6 C.F.R. § 5.3(a). In addition, the records sought must be described "in enough detail

to enable Department personnel to locate them with a reasonable amount of effort" and, whenever possible, "should include specific information about each record sought, such as the date, title or name, author, recipient, and subject matter of the record." *Id.* § 5.3(b). If the agency determines that the request does not reasonably describe the records being sought, "it shall tell [the requester] what additional information is needed or why [the] request is otherwise insufficient." *Id.*

Item (2) of the Board's FOIA request was facially deficient because it sought records concerning other individuals, but the Board failed to obtain written consent as required by DHS regulations. *See Godaire v. Napolitano*, No. 3:10cv01266, 2010 WL 6634572, at *7 (D. Conn. Nov. 18, 2010) (dismissing FOIA claim against DHS where FOIA request seeking information regarding another individual failed to provide that individual's consent as required by 6 C.F.R. § 5.3(a)); *Strunk v. Dep't of State*, 693 F. Supp. 2d 112, 115 (D.D.C. 2010) (same); *see also Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 115-16 (D.D.C. 2011) (finding that plaintiff failed to exhaust administrative remedies where he did not comply with DHS's regulatory requirements (*i.e.*, 6 C.F.R. § 5.21(f)) and rejecting plaintiff's argument that the regulations are invalid).

Indeed, the Board does not contend that it made an effort to comply with CIS's request for additional information and perfect its FOIA request. Rather, the Board asserts that it is challenging the lawfulness of DHS's consent requirement, and that prudential considerations therefore weigh against exhaustion. Such a challenge turns on statutory interpretation, which does lie in the judiciary's area of expertise. *See I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1209-10 & n.16 (D.C. Cir. 1984) (exhaustion not required where there were no questions of fact and issue "was purely one of statutory interpretation"). However, failure to obtain consent is not the only ground on which CIS deemed the FOIA request defective. CIS also found that the FOIA request did not reasonably describe the records being sought and asked for additional information -- *i.e.*, each subject's alien number, name, date of birth, and country of birth.[6] The Board asserts in conclusory fashion that it provided a "detailed description" of

---

[6] For this reason, *Gonzales and Gonzales Bonds & Insurance Agency, Inc. v. Department of Homeland Security*, No. C-11-02267, 2012 WL 424852 (N.D. Cal. Feb. 9, 2012), a case which the Board brought to the Court's attention at oral argument, is distinguishable. In that case, the plaintiff brought a FOIA claim in connection with its requests for alien files. *Id.* at *1. The arguments in the plaintiff's opposition brief suggested that it meant to challenge the lawfulness of DHS's consent requirements in 6 C.F.R. §§ 5.3(a) and 5.21(f). *Id.* at *6. The court stated that administrative exhaustion is not required where "the party's claim *rests upon* statutory interpretation," but dismissed the complaint with leave to amend because the plaintiff had not sufficiently articulated such a claim in its complaint. *Id.* (emphasis added). Here, however, a question of fact exists alongside the Board's challenge to DHS's consent requirements. It is also worth noting that the plaintiff in *Gonzales* filed 183 administrative appeals (out of 571 alien file requests) and, because DHS failed to timely respond to all but one of the appeals, the Court concluded that further appeals would be futile. *Id.* The Board, by contrast, has not filed an administrative appeal.

the records sought and that CIS's request for additional information was unreasonable. (Opp. at 4-5.) However, the Board neglects to explain why or how CIS should have been able to determine which alien files correspond with individuals taken into custody in Prince William County without the aid of the additional information it requested. Whether this request for additional information was reasonable is a question that is fact-based and agency-specific. It is therefore appropriate to require the Board to seek further administrative review before pursuing judicial intervention.

The Board cites two cases which, though recognizing that failure to comply with an agency's rules and procedures generally amounts to failure to exhaust administrative remedies, nevertheless held that plaintiffs' FOIA claims were not administratively barred: *Hull v. IRS*, 656 F.3d 1174 (10th Cir. 2011) and *Tanoue v. IRS*, 904 F. Supp. 1161 (D. Haw. 1995). The two cases are, however, readily distinguishable. In both *Hull* and *Tanoue*, plaintiffs contested determinations by the Internal Revenue Service that their FOIA requests sought third party "return information" and thus required third party authorization. *Hull*, 656 F.3d at 1180-81; *Tanoue*, 904 F. Supp. at 1165. *Hull* is distinguishable because there the plaintiff filed an administrative appeal challenging the IRS's determination. *Hull*, 656 F.3d at 1180-81. As such, the Tenth

Circuit concluded that the purposes of exhaustion had been served, and proceeded to address the case on the merits. *Id.* at 1183. In this case, by contrast, the Board has not filed an administrative appeal, and the purposes of exhaustion *will* be served by requiring the Board to avail itself of further administrative review. Turning to *Tanoue*, the agency there failed to provide any response to the plaintiff's FOIA request whatsoever. *Tanoue*, 904 F. Supp. at 1165. Moreover, the court distinguished the case before it by noting that the plaintiff's FOIA request included names and dates, and was sufficiently explicit as to direct the IRS to the requested documents. *Id.* at 1165-66. Indeed, the IRS did not contend that the plaintiff's request was too broad. *Id*. at 1165. As discussed above, here CIS directed the Board to perfect its FOIA request and asked for names and alien numbers because it found that the request did *not* reasonably describe the records being sought.

The Board's remaining arguments may be quickly dispatched. As the Board points out, CIS's responses do not indicate that CIS engaged in a search nor do they estimate the volume of records withheld. (Opp. at 4.) However, an agency's FOIA obligations are triggered only by a *valid* FOIA request. *Ramstack*, 607 F. Supp. 2d at 102. The Board also argues that CIS's responses are inadequate, as they failed to apprise the Board of its right to appeal. (Opp. at 4.) Because CIS's

17

responses merely informed the Board that its FOIA request was defective and requested additional information, this argument is without merit. *See Vest*, 793 F. Supp. 2d at 113.

In sum, the Board's request for alien files failed to satisfy DHS regulations and the Board neglected to perfect its request by submitting additional information.  As such, the Board failed to exhaust its administrative remedies.  Accordingly, summary judgment is granted insofar as the Board's FOIA claim relates to item (2) of the FOIA request.

### IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| March 1, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |